IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE. NO.:

WORLD DIGITAL RIGHTS, INC.,

      *Plaintiff,*

v.

JOHN DOES 1-100,

      *Defendants.*

_____/

## COMPLAINT

Plaintiff, WORLD DIGITAL RIGHTS, hereby sues Defendants, JOHN DOES 1-100, and states as follows:

### JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 U.S.C § 01 et seq.).

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C § 1338 (patents, copyrights, trademarks and unfair competition).

3. As set forth in Exhibit "A", each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located in Florida, and therefore pursuant to Fla. Stat. §48.193(1)(b) and (2), this Court has personal jurisdiction over each Defendant because (a) each Defendant committed the tortuous conduct alleged in this Complaint in the State of Florida, and (i) each Defendant resides in the State of Florida and/or (ii) has engaged in substantial and not isolated business activity in the State of Florida.

4. Venue is proper in this District pursuant to 28 U.S.C § 1391(b) because at least one of the Defendants resides in this District and all of the Defendants reside in Florida additionally, venue is proper in this District pursuant 28 U.S.C § 1400(a) (venue for copyright cases) because at least one Defendant or Defendant's agent resides in this District.

## PARTIES

5. Plaintiff is a limited liability corporation organized and existing under the laws of Panama and has its principal place of business located at Creditcorp Bank Plaza, 26th Floor Nicanor de Obarrio Avenue, 50th Street, Panama City, Republic of Panama.

6. Each Defendant is known to Plaintiff only by an IP address.

7. An IP address is a number that is assigned to electronic devices, such as computers, that are communicating with each other. Internet Service Providers (an "ISP") assign IP-addresses to each individual internet connection.

8. The ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity.

9. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants is properly joined because: (a) each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants, or in the alternative (b) the infringement complained of herein by each of the Defendants was part of a series of transactions, involving pieces of Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other, and (c) there are common questions of law and fact as the claims against each of the Defendants are identical and each of the Defendants used a BitTorrent protocol to infringe Plaintiff's copyrighted Work.

2

## GENERAL ALLEGATIONS

10. Nuclear Blast GmbH is a heavy metal record label that is incorporated and existing under the laws of Germany.

11. Nuclear Blast GmbH produced an album titled "This Is Where It Ends" (the "Work") by the band All Shall Perish.

12. On March 12, 2012, Nuclear Blast GmbH made Plaintiff the exclusive licensee of the Work.

13. On or about March 14, 2012, Nuclear Blast GmbH submitted an application for Copyright Registration (Services Request Number 1-737999234) for the Work.

14. A copy of the application for Copyright Registration evidencing Nuclear Blast's ownership as of the application date is attached as Exhibit "B".

15. BitTorrent is a peer-to-peer file sharing protocol used for distributing large amounts of data without overloading the source computer and network.

16. Instead of downloading a large file from a single source computer, the BitTorrent protocol allows its users to join what is known as a "swarm" of host computers which are able to download and upload from each other simultaneously versus downloading a file from one single computer directly connected to another single computer.

17. Each Defendant installed a "BitTorrent Client" onto his or her computer which is a software program that initiates the BitTorrent protocol. Examples of a BitTorrent Client include µTorrent and Vuze, both which can be downloaded directly from the internet.

18. Once a BitTorrent Client has been installed on a computer, it serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

19. A BitTorrent user that uploads a new file, known as an "initial seeder," first must create a torrent descriptor file using the BitTorrent Client that he or she previously installed onto his or her computer.

20. The BitTorrent Client then takes this new file, which in the subject action is the copyrighted Work, and divides it into identically sized groups of bits known as "pieces".

21. The BitTorrent Client then gives each piece a random and unique alphanumeric identifier known as "hash" and records the hash identifier in the torrent file.

22. When another user receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece does not contain any errors.  The hash identifier therefore serves as an electronic fingerprint which identifies the source and origin of the piece and that the piece is authentic and uncorrupted.

23. Torrent files also have an "announce section" that specifies the Uniform Resource Locator ("URL") of a "tracker" (a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL addresses) and an "info section" containing names for the files, their lengths, the piece length used, and the hash identifier for each piece.  All of this information is used by the BitTorrent Client on peer computers to verify the integrity of the data it receives.

24. The tracker computer(s) direct a peer user's computer to other peer user's computers that have particular pieces of the file (i.e the copyrighted Work) on them and facilitates the exchange of data among the computers.

25. Depending on which BitTorrent Client is used, a tracker can either be a dedicated computer ("centralized tracking") or each peer can act as a tracker ("decentralized tracking").

26. Torrent sites are websites that index torrent files that are currently being made available for copying and distribution of works/data by people using the BitTorrent protocol. www.torrentz.eu is a search engine that can be used to find a torrent site such as www.torrents.net. A copy of the torrent file for the copyrighted Work as seen on www.torrents.net is attached as Exhibit "C".

27. Once an initial seeder creates a torrent and uploads it onto one or more torrent sites then other peers can begin to download and upload the computer file where the torrent is linked using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

28. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

29. Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers. When all of the peers and seeders are working together it is known as a "swarm".

30. Therefore, an initial seeder can create a torrent that breaks a music album, like the copyrighted Work, into thousands of pieces saved in the form of a computer file,

upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then begin delivering the piece they just received to the other peers in the same swarm.

31. Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view, listen to or install the copyrighted Work. Also, once a peer has downloaded the full file, that peer becomes known as an additional seed because it continues to distribute the pieces of the computer file.

32. Upon information and belief, each Defendant went to a torrent site to download a torrent file and then downloaded and uploaded the copyrighted Work within the BitTorrent network.

33. Accordingly, each Defendant participated in a swarm by directly interacting and communicating with other members of the swarm through digital handshakes, the passing along of computer instructions, uploading, and by other types of transmissions. A printout of a computer screen illustrating the type of interactions between and among peers and the seeders, such as the Defendants, in a typical swarm is attached as Exhibit "D".

34. Plaintiff retained SKB UG to identify the IP addresses that are being used by those people that are using BitTorrent protocol and the internet to reproduce, distribute, display, or perform Plaintiff's copyrighted Work.

35. SKB UG is a German based firm that provides proprietary software solutions to detect copyright infringement through Peer to Peer Networks. The software used by SKB Enforcement UG helps detect worldwide violations of copyrighted computer games, music and movies rights, among others.

6

36. SKB Enforcement UG used forensic software named TORRENT LOGGER v.1.0.0.2 and related technology to enable the scanning of peer-to-peer networks for the presence of infringing transactions. Specifically, the software enters the networks where it appears to be a typical client. It interacts with the other peers. All digital handshakes and transactions are recorded by hash, exact time and IP number.

37. SKB Enforcement UG extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the file identified by the hash values:

    a.  68658c1876b89e24c6a84152b3c4477f2a38b37ad
    b.  47395ef7eeafe244348121486b546608b9a5d547
    c.  b6a17177bd3f5b67a1b7487d1bc3ffaf9684aeef
    d.  b91dfc9a8dcf67d601eaef13c57d25f4d4df88cf

38. The IP Addresses, hash numbers and hit dates contained in Exhibit "A" accurately reflect what is contained in the evidence logs, and show:

    a.  Each Defendant uploaded and/or downloaded a piece of Plaintiff's copyrighted Work identified by the Unique Hash numbers above; and

    b.  Each Defendant was part of the same series of transactions.

39. Through each of the transactions, each of the Defendant's computers used their identified IP address to connect to the investigative server from a computer in Florida in order to transmit a full copy, or a portion thereof, of a digital media file indentified by the Unique Hash Numbers.

40. SKB UG analyzed each BitTorrent piece distributed by each IP address listed on Exhibit "A" and verified that re-assemblage of the pieces using a BitTorrent Client results in a full copy of the Work (i.e. playable music album).

7

41. SKB Enforcement UG viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Numbers and determined that they were identical.

42. All conditions precedent to bringing this action have occurred or been waived.

43. Plaintiff retained counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for its services.

## COUNT I
## COPYRIGHT INFRINGEMENT

44. The allegations contained in paragraphs 1-43 are re-alleged as if fully set forth herein.

45. Plaintiff is the owner of the Registration for the Work which contains an original work of authorship.

46. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered Work that are original.

47. Plaintiff did not authorize, permit or consent to Defendants' reproduction, distribution, display or performance of its Work.

48. As a result of the foregoing, each Defendant violated Plaintiff's exclusive right to:

    a.  Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

    b.  Redistribute copies of the Work to the public by sale or other transfer of ownership, or rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

    c.  Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images in any sequence and/or by making the sounds accompanying the Work audible and transmitting said performance of the Work, by means of a device or process, to members of the public capable of

receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

d. Display the copyright Work, in violation of 17 U.S.C §§ 106(5) and 501, by showing individual images of the Work nonsequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

49. Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

50. Plaintiff has suffered actual damages that were proximately caused by each of the Defendants including lost sales, price erosion and a diminution of the value of its copyright.

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)     Permanently enjoin each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted Work;

(B)     Order that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody or control;

(C)     Order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computers under Defendant's possession, custody or control;

(D)   Award Plaintiff either its actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504-(a)-(b); or statutory damages in the amount of $150,000 per Defendant pursuant to 17 U.S.C. § 504-(a) and (c);

(E)   Award Plaintiff its reasonable attorney's fees and costs pursuant to 17 U.S.C § 505; and

(F)   Grant Plaintiff any other further relief this Court deems just and proper.

## COUNT II
## CONTRIBUTORY INFRINGEMENT

51. The allegations contained in paragraphs 1-43 are hereby re-alleged as if fully set forth herein.

52. Plaintiff is the owner of the Registration for the Work which contains an original work of authorship.

53. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, each Defendant copied the constituent elements of the registered Work that are original.

54. By participating in the BitTorrent swarm with the other Defendants, each Defendant induced, caused or materially contributed to the infringing conduct of each other Defendant.

55. Plaintiff did not authorize, permit or consent to Defendants' inducing, causing or materially contributing to the infringing conduct of each Defendant.

56. Each Defendant knew or should have known that other BitTorrent users, here the other Defendants, would become members of a swarm with the Defendant.

57. Each Defendant knew or should have known that other BitTorrent users in a swarm with it, here the other Defendants, were directly infringing Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.

58. Indeed, each Defendant directly participated in and therefore materially contributed to each other Defendant's infringing activities.

59. Each of the Defendants' contributory infringements were committed "willfully" within the meaning of 17 U.S.C § 504(c)(2).

60. Plaintiff has suffered actual damages that were proximately caused by each of the Defendants including lost sales, price erosions, and a diminution of the value of its copyright.

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)    Permanently enjoin each Defendant and all other persons who are in active concert or participation with each Defendant from continuing to infringe Plaintiff's copyrighted Work;

(B)    Order that each Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Work from each of the computers under each such Defendant's possession, custody or control; Question: can this be requested/ordered? The torrent file itself might not be a breach of copyrights/illegal.

(C)    Order that each Defendant delete and permanently remove the copy of the Work each Defendant has on the computer under Defendant's possession, custody or control;

11

(D)     Find that each Defendant is jointly and severally liable for the direct infringement of each other Defendant;

(E)     Award Plaintiff either its actual damages and any additional profits made by each Defendant pursuant to 17 U.S.C. § 504-(4)-(b); or statutory damages in the amount of $150,000 per Defendant pursuant to 17 U.S.C. § 504-(a) and (c);

(F)     Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(G)     Grant Plaintiff any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by a jury on all issues so triable.


Respectfully submitted,

DORTA & ORTEGA, P.A.

Omar Ortega, Esq.
*Florida Bar No.: 0095117*
3860 SW 8th Street, PH
Coral Gables, FL 33134
Tel:     (305) 461-5454
Fax:     (305) 461-5226
www.dortaandortega.com

***Counsel for Plaintiff***

12